'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MORROW-MEADOWS CORPORATION, | CV 22-05716-RSWL-SKx |
| Plaintiff, | **ORDER re: DEFENDANT'S MOTION to Dismiss** [22] |
| v. | |
| HONEYWELL INTERNATIONAL INC., | |
| Defendant. | |

Plaintiff Morrow-Meadows Corporation ("Plaintiff") brought the instant Action against Defendant Honeywell International Inc. ("Defendant") alleging breach of contract and violation of statutory prompt payment penalties (pursuant to Business & Professions Code § 7108.5[1] and Public Contract Code §§ 7107, 10262, and

---

[1] In the First Amended Complaint, Plaintiff refers to Business & Professions Code section 7108.8. See FAC ¶ 29, ECF No. 20. No such statute exists. Given the circumstances, Plaintiff likely meant to refer to Business & Professions Code section 7108.5. See Pl.'s Opp'n. to Mot. ("Opp'n") 13:24-25 n.17, ECF No. 23.

10262.5).  Currently before the Court is Defendant's
Motion to Dismiss [22] ("Motion").

    Having reviewed all papers submitted pertaining to
the Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:**
the Court **GRANTS in part** and **DENIES in part** Defendant's
Motion **WITHOUT LEAVE TO AMEND.**

**I.   BACKGROUND**

**A.   <u>Factual Background</u>**

    The First Amended Complaint ("FAC") alleges:
    Plaintiff, a subcontractor, and Defendant, a
general contractor, entered into a master subcontract
agreement (the "MSA").  FAC ¶ 4.  Prior to signing the
MSA, Defendant contracted with the City of Los Angeles
(the "City") to perform work on the Wastewater
Information Network System Project (the "WINS Project").
<u>Id.</u> ¶¶ 5-6.  The Parties amended the MSA to incorporate
certain terms and conditions from Defendant's WINS
Project contract.  <u>Id.</u> ¶¶ 7-8.

    Defendant issued to Plaintiff Purchase Order
No. 4402186019 on or about May 17, 2012, and Purchase
Order No. 4408556431 on or about July 14, 2016
(collectively "Purchase Orders").  <u>Id.</u> ¶¶ 9-10.  The
former provided that for $6,961,710, Plaintiff would
supply and install the WINS Project's Hyperion
Facility's electrical and controls systems with an
estimated completion date of December 31, 2018.  <u>Id.</u>
¶ 9.  The latter provided that for $1,686,970, Plaintiff
would supply and install the WINS Project's Terminal

2

Island site's electrical system with an anticipated completion date of December 29, 2017.  Id. ¶ 10.

During its performance of the Purchase Orders, Plaintiff suffered substantial delays, and provided Defendant with written notice regarding those delays. Id. ¶¶ 12, 15.  Defendant contacted the City to complain about the delays and to seek compensation from the City for the resulting losses that Plaintiff and Defendant suffered while working on the WINS Project.  Id. ¶¶ 13-14.  Defendant filed claims against the City in part based on the delays that Plaintiff suffered.  Id. ¶ 16.

An amendment to the MSA (the "Amendment") provided that Plaintiff would receive compensation for delays suffered.  Id. ¶ 19.

After filing claims regarding the delays on the WINS Project, Defendant recovered $11,075,901 from the City.  Id. ¶¶ 28-29.

**B.   Procedural Background**

Plaintiff filed a complaint in the Superior Court of California, County of Los Angeles, on July 6, 2022. Defendant removed [1] this Action to this Court based on diversity jurisdiction on August 12, 2022.  Plaintiff filed its FAC on November 21, 2022.

Defendant filed the instant Motion [22] on December 5, 2022.  Plaintiff opposed [23] on December 30, 2022. Defendant replied [24] on January 10, 2023.

///

///

1        II.   DISCUSSION

2  A.   __Legal Standard__

3        Federal Rule of Civil Procedure ("Rule") 12(b)(6)

4  allows a party to move for dismissal of one or more

5  claims if the pleading fails to state a claim upon which

6  relief can be granted.  A complaint must "contain

7  sufficient factual matter, accepted as true, to state a

8  claim to relief that is plausible on its face."

9  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quotation

10  omitted).  Dismissal is warranted for a "lack of a

11  cognizable legal theory or the absence of sufficient

12  facts alleged under a cognizable legal theory."

13  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699

14  (9th Cir. 1988) (citation omitted).

15        In ruling on a 12(b)(6) motion, a court may

16  generally consider only allegations contained in the

17  pleadings, exhibits attached to the complaint, and

18  matters properly subject to judicial notice.  <u>Swartz v.</u>

19  <u>KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007).  A court

20  must presume all factual allegations of the complaint to

21  be true and draw all reasonable inferences in favor of

22  the non-moving party.  <u>Klarfeld v. United States</u>, 944

23  F.2d 583, 585 (9th Cir. 1991).  "[T]he issue is not

24  whether a plaintiff will ultimately prevail but whether

25  the claimant is entitled to offer evidence to support

26  the claims."  <u>Jackson v. Birmingham Bd. of Educ.</u>, 544

27  U.S. 167, 184 (2005) (quoting <u>Scheuer v. Rhodes</u>, 416

28  U.S. 232, 236 (1974)).  While a complaint need not

4

contain detailed factual allegations, a plaintiff must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." Id. at 556 (quoting Scheuer, at 236).

**B.  Discussion**

   1.  Judicial Notice

   Before turning to the merits of Defendant's Motion, the Court firsts address Defendant's request for judicial notice.  A court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Under the judicially created incorporation-by-reference doctrine, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

   Here, Defendant requests the Court take judicial

notice of the Purchase Orders.  Def.'s Mot. to Dismiss ("Mot.") 5:23-6:4, ECF No. 22.  Plaintiff alleged a breach of contract claim because Defendant "breached the two Purchase Orders."  FAC ¶ 21.  Thus, the claim necessarily relies on the Purchase Orders' contractual provisions, and the Purchase Orders are central to the FAC.  See Marder at 448.  Moreover, Plaintiff did not question the authenticity of the documents attached to the Motion.  See generally Opp'n.  Therefore, it is appropriate for the Court to consider the Purchase Orders under the incorporation-by-reference doctrine, rather than take judicial notice.  Accordingly, the Court **DENIES** Defendant's request for judicial notice and instead considers the Purchase Orders under the incorporation-by-reference doctrine.

  2. <u>Plaintiff Properly Stated a Breach of Contract Claim</u>

   a. *Elements of a Breach of Contract Claim*

  A claim for breach of contract requires the plaintiff to prove four elements: (1) existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damage to plaintiff because of the breach.  <u>Body Jewelz, Inc. v. Valley Forge Ins. Co.</u>, 241 F. Supp. 3d 1084, 1090 (C.D. Cal. 2017) (internal citation omitted).  To survive a motion to dismiss, a complaint must include more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 555 (2007).  The complaint must offer a
cognizable legal theory under the facts alleged.
Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
(9th Cir. 1988) (citation omitted).

Here, Plaintiff adequately alleges the elements of
a breach of contract claim.  Plaintiff states that a
contract existed when Plaintiff signed the MSA with
Defendant on September 28, 2010.  FAC ¶ 4.  Next,
Plaintiff contends it performed all work mandated by the
Purchase Orders except for any work prevented or excused
by Defendant.  Id. ¶ 18.  Plaintiff also argues that it
was damaged by delays due to paying extended performance
costs.  Id. ¶ 17.  Section 2.2.2 of the Amendment
("Section 2.2.2") provided Plaintiff with a claim for
relief for delay damages.  Id. ¶ 19.  Finally, Plaintiff
asserts that Defendant breached the contract by failing
to compensate Plaintiff for the damages it suffered due
to project delays.  Id. ¶ 21.  In sum, Plaintiff has
sufficiently alleged a breach of contract claim.

   b.  *The Limitation of Liability Clause*

Defendant argues that the Purchase Orders "Section
28: Limitation of Liability" limits Defendant's
liability from "indirect, incidental, [and]
consequential" damages.  See Def.'s Exhibits, Ex. 1, ECF
No. 22.  Defendant further argues that Plaintiff's
breach of contract claim is a claim for delay damages,
and therefore a claim for consequential or incidental

1   damages.[2]  See Mot. at 7:16-24.  Defendant asserts that

2   the Limitation of Liability Clause causes Plaintiff's

3   claim for delay damages to "fail as a matter of law."

4   See id. at 7:25.

5       When contracting, Plaintiff and Defendant signed

6   the Purchase Orders, the MSA, and the Amendment.

7   Section 2.2.2 enabled Plaintiff to make claims and be

8   compensated for delay damages.  See FAC ¶ 19.  Upon

9   inspection, it appears that Section 2.2.2 and Section 28

10  of the Purchase Orders conflict with or contradict each

11  other.  Section 2.2.2 enables Plaintiff to recover delay

12  damages while Section 28 of the Purchase Orders may

13  limit Plaintiff from recovering such damages.  Plaintiff

14  asserts that the terms in the Amendment control over the

15  terms in the Purchase Orders.  Opp'n at 8:4-7.

16  Defendant asserts the opposite, that the terms in the

17  Purchase Orders take precedence.  Def.'s Reply to Pl.'s

18  Opp'n. ("Reply") 5:14-20, ECF No. 24.

19      Looking at the Purchase Orders, it becomes clear

20  that the Amendment controls.  The Purchase Orders

21  contain terms and conditions that establish an order of

22  precedence when there is conflict between contractual

23  documents.  See Def.'s Exhibits, Ex. 1.  They state the

24  following:

25      In the event of any conflict among provisions

26

27      [2] As the Court's decision rests on other grounds, the Court
    does not decide whether a claim seeking damages for "delays" is a
28  claim for "consequential or incidental damages."

1     . . . the following order of precedence

2     applies: a) any consignment agreement; then b)

3     any supply agreement; then c) any contract for

4     labor services; then d) the face of the

5     Purchase Order and any supplemental terms

6     included or incorporated by reference; then e)

7     these general Purchase Order provisions; and

8     finally f) other contract documents agreed to

9     in writing by the parties.

10   See id.

11        Defendant asserts that the Amendment should be

12   treated as "other contract documents agreed to in

13   writing" (sixth in the order of precedence) and

14   therefore the Purchase Orders (fifth in the order of

15   precedence) should control.  Reply at 5:14-20.  However,

16   Defendant offers no support for the contention that the

17   Amendment would qualify as "other contract documents"

18   rather than a "supply agreement" (second in order of

19   precedence) or a "contract for labor services" (third in

20   the order of precedence).  The MSA uses the title

21   "Master *Service* Agreement" while both the MSA and

22   Amendment refer to Plaintiff as "Supplier."

23   Furthermore, the Amendment contains headings such as

24   "Length of Workday and Work Week," "Covered Work," and

25   "Non-Conforming Work."

26        Therefore, it follows that the Amendment would

27   qualify as a "supply agreement" or "contract for labor

28   services" rather than "other documents" as Defendant

claims.  See <u>Foster Poultry Farms, Inc. v. Certain</u>
<u>Underwriters at Lloyd's</u>, No. 1:14-953 WBS SAB, 2016 U.S.
Dist. LEXIS 7629, at *8 (E.D. Cal. Jan. 20, 2016) ("An
unambiguous contract provision is enforced according to
the plain meaning of its terms, and courts commonly
refer to the dictionary to ascertain a provision's plain
and ordinary meaning.")

Whether the Amendment is a "supply agreement" or
"contract for labor services," Section 2.2.2 takes
precedence over the Limitation of Liability Clause.[3]
Given that if there is a conflict, Section 2.2.2 takes
precedence, Plaintiff can recover delay damages as
prescribed by Section 2.2.2.

   c.  *Contractual Condition*

Defendant argues that to recover under Section
2.2.2, Plaintiff must have given Defendant a detailed
statement of the costs of the delays "within seven
calendar days after the termination thereof."  Mot. at
8:4-8.  Defendant further argues that "the FAC does not

---

[3] Section 2.2.2 and the Limitation of Liability Clause may
not conflict with or contradict each other.  <u>See</u> Cal. Civ. Code §
1641 ("The whole of a contract is to be taken together, so as to
give effect to every part, if reasonably practicable, each clause
helping to interpret the other"); <u>Fernandez v. K-M Indus. Holding</u>
<u>Co.</u>, 646 F. Supp. 2d 1150, 1160 (N.D. Cal. 2009) ("inconsistent
terms should be 'reconciled, if possible, by such an
interpretation as will give some effect to the repugnant clauses,
subordinate to the general intent and purpose of the whole
contract.'").  The Court does not need to decide whether the two
terms are in conflict however, because if they are, Section 2.2.2
would take precedence as discussed above.  <u>See</u> Def.'s Exhibits,
Ex. 1.

allege that Plaintiff satisfied this condition." Id. at 8:10.

"In order to state a claim for breach of contract, . . . the performance of conditions precedent must be alleged either generally or specifically." Challenge Printing Co., Inc. v. Elecs. for Imaging Inc., 500 F. Supp. 3d 952, 963 (N.D. Cal. 2020).[4]  Notably, on a motion to dismiss, a court must "draw all reasonable inferences in favor of the nonmoving party." Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014).  Here, Plaintiff has generally alleged compliance with Section 2.2.2's contractual condition.  See generally FAC.  Plaintiff has alleged that it "repeatedly provided written notice to [Defendant] that Plaintiff was being delayed due to the actions or inaction of others." Id. ¶ 15. Furthermore, Plaintiff "has performed all things on its part to be performed under" the Purchase Orders.  Id. ¶

---

[4] Defendant argues that New York law applies to Plaintiff's breach of contract claim.  See generally Mot.  Like California courts, New York courts "have repeatedly found general allegations that the plaintiff satisfied the condition precedent to be sufficient." Superior Site Work, Inc. v. NASDI, LLC, No. 14-cv-1061 (ADS) (SIL), 2016 U.S. Dist. LEXIS 15793, at *22 (E.D.N.Y. Feb. 9, 2016); see also Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 650 (E.D.N.Y. 2012) ("[A]t the motion to dismiss stage, '[t]he issue is not whether a plaintiff will . . . prevail on [his or] her claim but whether [he or] she is entitled to offer evidence in support of the allegations in the complaint.'")  Here, either under New York or California law, Plaintiff has pled compliance with Section 2.2.2's condition.  The Court therefore does not need to and does not decide whether New York or California law applies to Plaintiff's claims.

18.  Defendant was also "aware of the delays and resulting damages being suffered by Plaintiff," while writing to Plaintiff to quantify its delay damages.  Id. ¶ 16.  Therefore, given the motion to dismiss standard, it can be reasonably inferred that Plaintiff complied with Section 2.2.2's conditional notice requirement.

In sum, the Court **DENIES** Defendant's Motion to Dismiss as to Plaintiff's breach of contract claim.

3.  Prompt Payment Statute Claim

a.  *Statutes Not Applicable Under the Facts Offered by Plaintiff*

Plaintiff alleged that Defendant violated four California "prompt payment statutes" (collectively, the "Statutes").  See FAC ¶ 17.  The first statute is California Business and Professions Code section 7108.5, which provides that within seven days of receiving progress payments, a "prime contractor" must pay its subcontractors according to their interest in the payment.  Cal. Bus. & Prof. Code § 7108.5.  The next two statutes, California Public Contract Code Sections 10262 and 10262.5, impose the same requirement.  Cal. Pub. Cont. Code § 10262 ("The contractor shall pay to his or her subcontractors, within seven days of receipt of each progress payment, the respective amounts allowed the contractor on account of the work performed by his or her subcontractors, to the extent of each subcontractor's interest therein"); Cal. Pub. Cont. Code § 10262.5.  The final statute cited is California Public

Contract Code section 7107, which holds that contractors must pay their subcontractors their share of retention proceeds within the same seven-day timeframe.  Cal. Pub. Cont. Code § 7107.

Here, because of delays, Defendant served the City with various claims for compensation, including Claim No. 004.  FAC ¶¶ 17, 26.  Plaintiff alleged Defendant violated the Statutes by refusing to pay Plaintiff any portion of its Claim 004 "recovery."  Id. ¶ 29.  However, Plaintiff failed to allege that it possessed any contractual interest in the recovery, and the Statutes all presuppose a contractual payment obligation.  See, e.g., Cal. Bus. & Prof. Code § 7108.5 ("to the extent of each subcontractor's interest therein"); see generally FAC.  Instead, Plaintiff merely alleged that because Claim No. 004 included compensation requests based off Plaintiff's delays, it was entitled to a portion of the recovery.  Id. ¶ 31.  Nowhere in the FAC does Plaintiff allege that the City or Defendant intended for Claim No. 004 to compensate Plaintiff.  See generally id.  Therefore, Plaintiff's Statutes claim is insufficiently pled.

Plaintiff's Statutes claim is insufficiently pled for other reasons as well.  California prompt payment statutes distinguish between payment types; thus, as a threshold matter, courts must evaluate the type of payment involved to determine what statutes apply. HARRY D. MILLER & MARVIN B. STARR, CH. 31. CONSTRUCTION LAW AND

1  CONTRACTING, IN MILLER AND STARR CAL. REAL EST. (4TH ED. 2015) §
2  31:92.  Both "progress payments" and "retention
3  proceeds" are defined terms in the construction trade.
4  Id.  "A progress payment is a . . . periodic payment,
5  paid over the length of a project . . . typically on a
6  percentage of work during a defined time period."  Id.
7  "Retention proceeds" refer to payment withheld by an
8  owner or contractor until project completion to secure
9  full contract performance.  Id.; see also Yassin v.
10 Solis, 108 Cal. Rptr. 3d 854, 861 (2010) (noting that
11 "retention occurs when the owner retains a percentage
12 from each progress payment as a form of security")
13 (citing KENNETH C. GIBBS ET AL., CAL. CONSTRUCTION LAW (16TH ED.
14 2000) § 3.02[A][5] at 103).

15      Here, Plaintiff alleges that it requested "extended
16 performance costs incurred as a result of the repetitive
17 and pervasive delays on the projects."  FAC ¶ 24.  The
18 Purchase Orders appear to contain no provisions that
19 would compensate Plaintiff's extended performance costs.
20 See generally Def.'s Exhibits.[5]  The only provision that
21 would compensate Plaintiff for extended performance
22 costs, is Section 2.2.2.  See generally FAC.  This
23 provision does not define the extended performance costs

24
25      [5] The Purchase Orders appear to have explicitly established
   "Terms of payment" - "90% Net, 10% Retention."  See Def.'s
26 Exhibits.  These provisions likely entitled Plaintiff to 90% of
   the Purchase Orders' payment within ninety days of the invoice
27 receipt and enabled Defendant to retain 10% of the cost until
   project completion.  The latter 10% would qualify as "retention
28 proceeds" under California Public Contract Code § 7107.

1   as "progress payments" or "retention proceeds," but

2   instead as delay damages.  See id.  Therefore, given

3   that Plaintiff is requesting "extended performances

4   costs," Plaintiff is neither requesting progress

5   payments nor retention proceeds, but instead is

6   requesting delay damages.  See FAC ¶¶ 21, 24.  Given

7   that the Statutes only apply to progress payments and

8   retention proceeds, Plaintiff's request for delay

9   damages should have been exclusively brought under its

10  breach of contract claim.

11      Furthermore, Plaintiff does not allege that

12  Defendant failed to pay Plaintiff the full contract

13  price of the two Purchase Orders.  See generally FAC;

14  see also Murray's Iron Works, Inc. v. Boyce, 158 Cal.

15  App. 4th 1279, 1297 (2008) ("Progress payments . . . are

16  payments of portions of the contract price based upon

17  the progress of the contract work."); Blois Constr.,

18  Inc. v. FCI/Fluor/Parsons, 245 Cal. App. 4th 1091, 1096

19  (2016) (holding that retention proceeds are payments of

20  part of a contract price that are withheld).  Delay

21  damages are "damages due to construction being completed

22  later than anticipated."  Chinese Hosp. Ass'n v. Jacobs

23  Eng'g Grp., Inc., No. 18-cv-05403-JSC, 2019 U.S. Dist.

24  LEXIS 198635, at *11 (N.D. Cal. Nov. 15, 2019).

25      In its FAC, Plaintiff did not allege that Defendant

26  failed to timely proffer *any* of the contractually owed

27  payment.  See generally FAC.  Furthermore, Plaintiff did

28  not allege that Plaintiff possessed a contractual

interest in Defendant's Claim No. 004 recovery.  The
Court therefore **GRANTS** Defendant's Motion on Plaintiff's
statutory prompt payment penalties claim.

  4. <u>Leave to Amend</u>

 "Where a motion to dismiss is granted, a district
court must decide whether to grant leave to amend."
<u>Winebarger v. Pennsylvania Higher Educ. Assistance
Agency</u>, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).
"The court should give leave [to amend] freely when
justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the
Ninth Circuit, "Rule 15's policy of favoring amendments
to pleadings should be applied with 'extreme
liberality.'"  <u>United States v. Webb</u>, 655 F.2d 977, 979
(9th Cir. 1981).  Against this extremely liberal
standard, the Court may consider "the presence of any of
four factors: bad faith, undue delay, prejudice to the
opposing party, and/or futility."  <u>Owens v. Kaiser
Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir.
2001) (citation omitted).

 Here, allowing Plaintiff to amend the FAC would be
futile because there is no indication that any
additional facts exist that would establish a statutory
prompt payment penalties claim.  Given that the provided
contracts do not give Plaintiff an interest in
Defendant's settlement with the City, Plaintiff's claim
cannot be cured through amendment.  Because the
defective prompt payment penalties claim cannot be cured
through amendment, leave to amend would be futile.  <u>See</u>

<u>Nat'l Funding, Inc. v. Com. Credit Counseling Servs.,</u> <u>Inc.</u>, 817 F. App'x 380, 385 (9th Cir. 2020) (affirming district court's denial of leave to amend because no additional facts are available that would support plaintiff's claim to cure its deficiencies).  Therefore, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's prompt payment penalties claim **WITHOUT LEAVE TO AMEND.**

### III. CONCLUSION

Based on the foregoing, the Court **DENIES in part** Defendant's Motion as to Plaintiff's breach of contract claim and **GRANTS in part** as to Plaintiff's statutory prompt payment penalties claim **WITHOUT LEAVE TO AMEND.**

**IT IS SO ORDERED.**

DATED: March 13, 2023          /s/Ronald S.W. Lew
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge